IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN  DIVISION

FILED

03 JAN 31 PM 1:20

U.S. DISTRICT COURT
N.D. OF ALABAMA

DEBRA MOULTON and LINDA EISERLOH,  )
                                    )
                     Plaintiffs,    )
                                    )
vs.                                 )
                                    )
DONALD RUMSFIELD, Secretary of Defense,  )
                                    )
                     Defendant.     )

Civil Action Number
**01-C-0606-S**

ENTERED

FEB 3  2003

## MEMORANDUM OPINION ON DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiffs Debra Moulton and Linda Eiserloh filed this action alleging that their

employer, the Defense Contract Management Agency, a branch of the United States Department

of Defense, subjected them to unlawful sex and age discrimination and retaliation, in violation of

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII");

and the Age Discrimination in Employment act, 29 U.S.C. § 621 *et seq.* ("ADEA"). Defendant[1]

has moved for summary judgment.  (Doc. No. 6) Upon consideration of the record and the

arguments of counsel, the Court concludes that defendant's motion for summary judgment is due

to be granted.

---

[1]Donald Rumsfeld is named as the defendant in his official capacity as Secretary of
Defense and the head of the agency. *See* 42 U.S.C. § 2000e-16(c); *Canino v. United States Equal
Employment Opportunity Commission,* 707 F.2d 468, 472 (11th Cir.1983); *Honeycutt v. Long,*
861 F.2d 1343, 1349 (5th Cir.1988); *Ellis v. United States Postal Service,* 784 F.2d 835, 838 (7th
Cir.1986)



## I. BACKGROUND

Ms. Moulton is employed as an Engineer at Defense Contract Management Agency ("DCMA") Birmingham. Ms. Eiserloh is also employed at DCMA Birmingham, as a Procurement Technician. Moulton and Eiserloh were among numerous employees interviewed by an investigating officer in connection with a sexual harassment complaint lodged in November 1998 by a co-worker, Ms. Rose Marie Saunders, against another employee, Mr. Melvin Gilliland. On May 20, 1999, following the conclusion of the investigation, Moulton and Eiserloh each received a letter chastising her for allegedly engaging in conduct that may have contributed to Gilliland's sexual harassment of Saunders.

Specifically, Moulton's immediate supervisor, Ms. Hycentha Hodge, stated in the one-page document she presented to Moulton, styled as an "Admonishment," that Moulton had been mentioned as being a member of an office "rumor mill" that had sought to encourage Gilliland to disclose personal information, including his feelings for Saunders. *See* Exhibit A to Declaration of Hycentha Hodge ("Moulton Admonishment"). Hodge wrote, "The conversations you and others had with [Gilliland] about his personal feelings and desires caused information to leak to [Saunders]. The [employee] interviews did not indicate that you had direct conversations with [Saunders]. However, they did indicate the conversations with [Gilliland] possibly served to instigate the situation." *Id.* Hodge ordered Moulton "to cease and desist from engaging in or being a party to conversations of a personal nature that negatively impacts (sic) another employee," and cautioned that "[w]hile social visits within the office are not prohibited, you are encouraged to be sensitive about the impact your social conversations could have on others within this organization." Finally, Hodge explained that the admonishment letter was "an

informal disciplinary action" that would "not be documented on [her] 7B card." It would, rather,
remain in Moulton's "local personnel folder" for six months, at which time it would be removed
and destroyed if she was not involved in any other reported incidents. Hodge states that her
"best recollection" is that the Admonishment was removed from Moulton's local personnel
folder on about May 25, 1999, which is only five days after it was issued and approximately six
months after Hodge had initially spoken to Moulton in about December 1998 about her possibly
having contributed to Gilliland's harassment of Saunders. Hodge Decl. ¶ 3.

Eiserloh's immediate supervisor, Mr. Earl Phillips, presented her with a similar
document, entitled, ironically enough, "Oral Admonishment." *See* Exhibit A to Declaration of
Earl R. Phillips ("Eiserloh Admonishment"). Phillips stated therein that the investigation of
Saunders's charge had suggested that Eiserloh had made comments or taken actions or both that
"were contributory to the hostile work environment experienced by . . . Saunders," including
"continually gaining private and personal information (though perhaps not with malicious intent)
from Mr. Gilliland and sharing that information." *Id.* "This type of activity," Phillips
continued, "served to inflame the situation . . . ." *Id.* It also was, he said, "very close to a
violation of Item 17 of enclosure 1 to the Table of Offenses and Penalities of DLAR [Defense
Logistics Agency Regulation] 1406.1," *id.*, which concerns "[m]aking false, malicious, or
unfounded statements against other employees with disregard for, or intent to, damage their
reputation, authority, official standing or position." Exhibit B to Phillips Decl. at 11-12. Thus,
Phillips directed Eiserloh to "cease and desist from soliciting or being a part of conversations of
a personal nature and from sharing any such information you may inadvertently overhear with
other employees . . . ." Eiserloh Admonishment. Finally, Phillips stated that his "Oral

Admonishment" was "an informal disciplinary action" that would not go in Eiserloh's "personnel file," but would stay in her "supervisor's 7B folder for a period not to exceed 12 months." *Id.* Phillips suggests that Eiserloh's admonishment was removed from her 7B file when she transferred to another supervisor, less than a year after it was issued. Phillips Decl. ¶ 7.

It is undisputed that neither Moulton nor Eiserloh suffered a loss in pay or was denied any other benefits as a result of receiving her admonishment letter. *See* Plaintiff's Responses to Consolidated Discovery Requests, Answers to Interrogatories, ¶ 1. They also have not been demoted or experienced a change in job duties. *Id.* ¶ 2. Nor have they resulted in being denied a promotion. *Id.* ¶3.

After receiving the admonishment letters, Moulton and Eiserloh filed administrative complaints of discrimination. Moulton alleged that she had been given her admonishment in retaliation for having previously filed an administrative complaint alleging unlawful discrimination on the basis of gender and her Hispanic national origin in the denial of a promotion. Eiserloh asserted that her being given an admonishment constituted unlawful discrimination because of gender and age.

After their administrative complaints were denied, Moulton and Eiserloh filed a complaint in this court. In that complaint, Moulton claims that her employer's decision to admonish her violated Title VII in that it was allegedly imposed (1) in retaliation for her having previously filed an administrative complaint of gender discrimination, (2) because she is female, and (3) because she is Hispanic. *See* Complaint (doc. no. 1) ¶ 7. Eiserloh claims that the admonishment against was imposed because she is female, in violation of Title VII, and because

of her age, in violation of the ADEA. *Id.* ¶ 8. Following discovery, defendant has moved for summary judgment.

## II. SUMMARY JUDGMENT STANDARDS

A district court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial judge is not to weigh the evidence at summary judgment to determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). Further, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970)). "Summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all evidence is viewed in the light most favorable to the non-moving party." *Morrison v. Washington County, Ala.*, 700 F.2d 678, 682 (11th Cir. 1983) (citing *Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608).

## III. DISCUSSION

### A.     The Statutory Framework

Both plaintiffs bring claims against their federal employer for unlawful employment discrimination because of sex, while Moulton also claims that defendant discriminated against she is Hipanic. The general anti-discrimination provision of Title VII, § 703(a)(1), makes it an

"unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Upon its original enactment in 1964, however, the provisions of Title VII, including § 703(a), did not apply to federal employers. *See* 42 U.S.C. § 2000e(b); *Brown v. General Services Administration*, 425 U.S. 820, 825, 96 S.Ct. 1961, 1964, 48 L.Ed.2d 402 (1976). But in 1972, Congress extended Title VII so that it applies not only to employment in the private sector, but to employees of the Federal Government as well. *See* Equal Employment Opportunity Act of 1972, 86 Stat. 111, 42 U.S.C. § 2000e-16; *West v. Gibson*, 527 U.S. 212, 214, 119 S.Ct. 1906, 1908, 144 L.Ed. 2d 196 (1999). Section 717(a) of Title VII sets forth the basic Federal Government anti-discrimination standard. It says that "[a]ll personnel actions affecting employees or applicants for employment [of specified Government agencies and departments] shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a).

Moulton also brings a claim alleging that she was subjected to unlawful retaliation for having previously filed an administrative complaint of sex discrimination. Title VII's general anti-retaliation provision, § 704(a), makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). And although the language of § 717(a) does not expressly prohibit retaliation by a federal employer because its employee engaged in protected opposition

or participation, such claims are cognizable by virtue of the 1972 amendments to Title VII. *Canino v. United States Equal Employment Opportunity Commission*, 707 F.2d 468, 472 (11ᵗʰ Cir. 1983); *Porter v. Adams*, 639 F.2d 273, 277-78 (5ᵗʰ Cir. March 1981).[2]

Finally, Eiserloh brings a claim alleging that defendant unlawfully discriminated against her because of age. Enacted in 1967, the ADEA generally prohibits employers from discriminating on the basis of age against employees who, like Eiserloh, are at least 40 years of age. 29 U.S.C. § 621 et seq. Using language similar to § 703(a) of Title VII, § 4(a)(1) of the ADEA makes it "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA was amended in 1974 to extend to federal employees the Act's protection of older workers against discrimination in the workplace based on age. Here, too, the ADEA borrowed Title VII's terminology, using language similar to § 717(a), providing as follows: "All personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . [in specified Federal agencies] shall be made free from any discrimination based on age." ADEA § 15(a); 29 U.S.C. § 633a.

### B.    Adverse Employment Action

Defendant argues that the plaintiffs' Title VII and ADEA must fail because, even if motivated by an unlawful animus, the temporary placement of the letters of admonishment in their respective personnel files, standing alone, is not a sufficiently substantial adverse action to

---

[2]All decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11ᵗʰ Cir. 1981) (en banc).

support their claims.  Plaintiffs admit that the admonishment letters that underlie their claims
have not resulted in any economic loss or any other form of tangible effect on plaintiffs'
employment, such as a demotion, a change in job title or responsibilities, or the denial of a
promotion.  Plaintiffs nonetheless maintain that the letters themselves are "disciplinary" or
"corrective" action and thus will support claims under Title VII and the ADEA.  The court
agrees with defendant.[3]

In order for an employee to prove a prima facie case under either Title VII or the ADEA,
she must present evidence indicating that a prohibited discriminatory or retaliatory animus
resulted in her employer taking against her what courts have generally come to call "adverse
employment action."  *See, e.g., Kelliher v. Veneman*, — F.3d —, —, 2002 WL 31513310 (11th
Cir. Nov. 13, 2002); *Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002); *Bass v. Board of
County Com'rs, Orange County, Fla.*, 256 F.3d 1095, 1118 (11th Cir. 2001);  *Davis v. Town of
Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001); *Gupta v. Florida Bd. of Regents*, 212 F.3d
571, 587 (11th Cir. 2000); *Eskra v. Provident Life & Acc. Ins. Co.*, 125 F.3d 1406, 1411 (11th Cir.
1998).  *See also Brown v. Brody*, 199 F.3d 446, 452-55 (D.C. Cir. 1999) (holding that despite
some difference in the language of § 717(a) of Title VII that protects federal employees versus
the language of § 703(a) that applies generally in the private and non-federal sectors, the
"adverse employment action" requirement is the same for all types of employees).  That is, the
employee "must show [that discrimination or retaliation resulted in] a *serious* and *material*

---

[3]Because the court finds that defendant is entitled to summary judgment because the
record shows without dispute that neither plaintiff suffered "adverse employment action"
required to sustain their claims, the court pretermits its discussion of the other issues defendant
raises.

change in the terms, conditions, or privileges of employment." *Davis*, 245 F.3d at 1239

(emphasis original). While an employee clearly need not necessarily show that she suffered a

so-called "ultimate employment action" such as discharge or a failure to hire, the adverse action

complained of must satisfy a " 'threshold level of substantiality.' " *Id.*, 245 F.3d at 1238 (quoting

*Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998)). Thus, " 'not

everything that makes an employee unhappy is an actionable adverse action.' " *Doe v. Dekalb*

*County School Dist.*, 145 F.3d 1441, 1449 (11th Cir. 1998) (quoting *Smart v. Ball State Univ.*, 89

F.3d 437, 441 (7th Cir. 1996)). Indeed, "the employee's subjective view of the significance and

adversity of the employer's action is not controlling; the employment action must be materially

adverse as viewed by a reasonable person in the circumstances." *Davis*, 245 F.3d at 1239 (citing

*Doe, supra*, at 1453).

In *Davis, supra*, an African-American police officer brought a Title VII action claiming

that his municipal employer had subjected him to unlawful race discrimination in violation of §

703 by virtue of his supervisor issuing to him two negative job performance memoranda, one of

which was placed in the plaintiff's personnel file, to be removed after one year if his

performance problems did not reoccur. *See* 245 F.3d at 1234-36. It was undisputed, however,

that the plaintiff did not suffer any reduction in salary, loss of benefits, denial of promotions,

workplace reassignment, transfer, or change in permanent job title as a result of the memos. *Id.*

at 1236. In affirming judgment as a matter of law for the employer, the Eleventh Circuit held

that neither memo gave rise to adverse employment action capable of supporting a Title VII

discrimination claim. *Id.* at 1240. The court recognized that the evidence showed that the first

memo did not have "any tangible job consequence . . . , in the form of a loss in pay or benefits or

Page 9 of 14

further discipline," *id.*, and thus was not actionable because "the loss of prestige or self-esteem felt by an employee who receives what he believes to be unwarranted job criticism or performance review will rarely–without more–establish the adverse action necessary to pursue a claim under Title VII's anti-discrimination clause." *Id.* at 1242 (footnote omitted). The plaintiff argued, however, that the second negative job memo should be deemed sufficiently material and adverse because it was retained in his personnel file, and thus could jeopardize his chances of obtaining a different position in the future with his employer or elsewhere. *Id.* 245 F.3d at 1240-41. The court disagreed, noting that the evidence was undisputed that the memo had been removed from the plaintiff's personnel file, albeit perhaps later than promised, and there was no evidence that during the time it was in his file it had caused him to be denied a promotion or passed over for a job elsewhere or to suffer any other tangible adverse consequences. *Id.* at 1242-43.

The court concludes that the written admonishment letters upon which Moulton and Eiserloh found their Title VII and ADEA claims are not materially distinguishable from the memoranda the Eleventh Circuit found not actionable in *Davis*, *supra*. As in that case, the employer here presented the plaintiffs with negative job memoranda that constituted a form of low-level, relatively informal disciplinary or corrective action that the plaintiffs assert are both unwarranted and discriminatory. Also as in *Davis*, it is undisputed that these memos, although being retained temporarily in their respective personnel files, were subsequently removed and never resulted in the plaintiffs' suffering any kind of tangible adverse action at all, such as a loss in pay or other benefits, a change in job title or duties, or the denial of a promotion. Because the evidence demonstrates that the memos did not cause either Moulton or Eiserloh to endure a

"*serious* and *material* change in the terms, conditions, or privileges of employment," *Davis*, 245 F.3d at 1239, plaintiffs did not suffer an adverse employment action as required to sustain their Title VII and ADEA claims. *See also Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001) (negative performance evaluations that did not result in any effect on the plaintiff's employment could not support a retaliation claim under the Americans with Disabilities Act); *Brown*, 199 F.3d at 457-58 & n.11 (a performance evaluation and letter of admonishment that did not have tangible effects on the plaintiff's federal employment were not sufficiently substantial or material adverse actions under Title VII); *Sweeney v. West*, 149 F.3d 550, 556-57 (7th Cir. 1998) (civilian army employee could not maintain her Title VII retaliation claim based upon "counseling statements" that did not have any tangible job consequences).

Plaintiffs have not referred the court to any case, involving a federal employee or otherwise, holding that a chastisement of an employee put to writing, which has no discernable impact on the terms, conditions, or privileges of employment, may itself support a claim of discrimination or retaliation under Title VII, the ADEA, or any similar federal employment discrimination statute. Indeed, plaintiffs suggest that "one does not need to review and interpret cases to determine whether [the admonishment letters] constituted actionable practices." Plaintiffs' Brief in Opposition to Motion for Summary Judgment at 1. Rather, they contend that they can show, based upon a variety of statutory, regulatory, and contractual sources of authority, that the admonishment letters are actionable "personnel actions" for purposes of § 717(a) of Title VII and § 633a of the ADEA. None of these sources, however, is availing.

First, plaintiffs refer the court to 5 U.S.C. § 2302(a)(2)(A)(iii), which contains a definition of the term "personnel action" that includes "disciplinary or corrective action." The

short answer to this argument is simply that 5 U.S.C. § 2302 is not part of Title VII or the ADEA, which do not themselves further define the term "personnel actions." *See Brown*, 199 F.3d at 455 n.8. Rather, 5 U.S.C. § 2302 is part of the Civil Service Reform Act ("CSRA"), which establishes a separate system of administrative and judicial review of certain personnel actions allegedly taken against federal civil servants for a variety of prohibited considerations. *See Broughton v. Courtney*, 861 F.2d 639, 642 (11th Cir. 1988). Plaintiffs' complaint does not invoke the CSRA as a basis for any claim they assert in this court. Even if the court were to indulge in the assumption that the letters of admonishment to Moulton and Eiserloh might be considered "personnel action" for purposes of the CSRA, despite the fact that they admittedly had absolutely no tangible impact whatsoever on the plaintiffs' employment, that would still not be controlling of whether the letters they were "personnel actions" within the meaning of § 717(a) of Title VII or § 633a of the ADEA. And given that the federal judiciary has with virtual unanimity interpreted both Title VII and the ADEA to require at least some significant change in the terms, conditions, or privileges of employment, the court finds that plaintiffs' reliance upon 5 U.S.C. § 2302(a)(2) is misplaced.

Finally, plaintiffs contend that oral admonishments and written reprimands are considered types of "disciplinary action" for purposes of departmental regulations, *see* DLAR 1406.1(III)(K)(1) & (2), and the union contract governing the relationship with their employer. *See* Article 34 to the Union Contract, Attachment 2 to Plaintiffs' Submissions in Opposition to Summary Judgment. Therefore, plaintiffs contend, the admonishment letters that they each received support a cause of action under Title VII and the ADEA. Again, the court disagrees. How a particular job action is viewed within the context of an employer's formal disciplinary

policy may, of course, be relevant to determine whether that action constitutes an adverse

employment action for purposes of Title VII or the ADEA. *See e.g., Davis*, 245 F.3d at 1240.

(noting that a memo received by the plaintiff "was not a formal reprimand under the

[employer's] 'progressive discipline' structure . . . ."). Nonetheless, the plaintiffs' argument is

fatally flawed, as it is based on the false premise that an employer's action that might be deemed

"disciplinary" or "corrective" is, by virtue of that characterization, capable of supporting a Title

VII or ADEA cause of action. An instance in which a supervisor reprimands an employee

verbally or in writing may be no less susceptible to being labeled "disciplinary" or "corrective"

as, say, a suspension of an employee. But while a suspension generally will support a claim, *see,*

*e.g., Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 920 (11th Cir. 1994); *Robinson v. City of*

*Dallas*, 514 F.2d 1271, 1272 (5th Cir. 1975), a reprimand, standing alone, usually will not, at

least absent a showing that it resulted in some form of more tangible job effects. *Davis*, 245 F.3d

at 1241 ("[C]riticisms of an employee's job performance--written or oral--that do not lead to

tangible job consequences will rarely form a permissible predicate for a Title VII suit."). In

short, the issue is not simply whether an employer's action constitutes a "reprimand" or

"discipline" or "corrective action"; what matters is whether the employer's action results in a

serious and material alteration of the employees compensation, terms, conditions, or privileges

of employment. *See Davis, supra; Keenan v. American Cast Iron Pipe Co.*, 707 F.2d 1274, 1277

(11th Cir. 1983) ("[A] reprimand *that has a meaningful adverse effect on an employee's working*

*conditions* may be prohibited [under Title VII]" (emphasis added)). Even if the letters of

admonishment in this case were, in fact, "disciplinary" or "corrective" in nature, they did not

result in any material change in the plaintiffs' employment. Thus, they will not support a claim

under either Title VII or the ADEA.

### III. CONCLUSION

Based on the foregoing, the court concludes that defendant's motion for summary judgment is due to be granted. The record demonstrates that the admonishment letters that form the basis of plaintiffs' claims did not result in their suffering any kind of tangible or material adverse change in compensation or the terms, conditions, or privileges of their employment. Thus, neither plaintiff endured adverse employment action, as required to support claims under Title VII or the ADEA. Accordingly, Plaintiffs' claims shall be dismissed with prejudice. The court shall enter an appropriate separate order.

Done this ___3rd___ day of ___January_____, 2003.


_____
Chief United States District Judge
U. W. Clemon